FILED
SUPERIOR COURT
OF GUAM

2026 JUL -2 PM 3: 14

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| TELEGUAM HOLDINGS, LLC, | CIVIL CASE NO. <u>CV0059-26</u> |
|---|---|
| Plaintiff, | |
| vs. | **DECISION AND ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS** |
| SMITHBRIDGE GUAM, INC., | |
| Defendant. | |

Plaintiff Teleguam Holdings, LLC dba GTA moves to dismiss portions of Defendant Smithbridge Guam, Inc.'s counterclaims under Guam Rules of Civil Procedure 12(b)(6) and 12(b)(7), or alternatively for judgment on the pleadings under Rule 12(c). Specifically, GTA seeks dismissal of Smithbridge's breach-of-contract counterclaims and its foreclosure-of-lien claim, and alternatively seeks judgment on the pleadings on GTA's claims for declaratory relief and cancellation of mechanic's lien. The Motion is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

GTA entered into a prime contract with Novamar International on December 15, 2022, for the construction of the Alupang Data Center. V. Compl., Ex. A (Feb. 10, 2026); V. Answer, Ex. A (Mar. 3, 2026). Novamar then subcontracted with Smithbridge on January 23, 2023, to provide labor, materials, equipment, and services for the project; the stated sum for the performance of the subcontract was $13,758,408.87. V. Answer, Exs. B–C.

ORIGINAL

Smithbridge alleges that GTA paid it directly for project work for at least twenty months, while Novamar never paid it directly. *Id.* at 7–8. Smithbridge further alleges that GTA required partial waivers and releases before releasing payment, and that this practice continued until March 2025, when a payment was short by $36,376.47. *Id.* at 8.

On September 30, 2025, Smithbridge executed a partial release and waiver, stating that Novamar had "fully and duly paid" for all labor, materials, equipment, and supplies provided through May 18, 2025." V. Compl., Ex. A. Smithbridge alleges it only later learned in September 2025 that GTA still had not paid the shorted March amount. V. Answer at 8.

On January 5, 2026, Smithbridge sent GTA notice of its intent to record a mechanic's lien, and on January 6, 2026 Smithbridge recorded the lien. V. Compl. at 4. The lien noted the value of the work performed at $18,483,075.81, of which $3,607,315.81 remained unpaid to Smithbridge on the subcontract. *Id.* It also noted that all work was completed on June 7, 2025. *Id.* The paragraph preceding the signature line of the document states that Smithbridge "claims a mechanic's lien in the sum of $3,748,000…for the improvement of the described real property, on the real property and on the improvement." *Id.*

GTA filed its Complaint on February 10, 2026, alleging that the mechanic's lien was defective because it was untimely, and seeking declaratory relief, attorney's fees, and costs. V. Compl. In its Counterclaim, Smithbridge asserted claims against GTA for quantum meruit, breach of contract, and foreclosure of lien. V. Answer. The Counterclaim alleged that $4,322,027.85 remained due, then further alleged $500,000 due for other work and $320,000 due in unpaid interest. *Id.* at 8–9. Smithbridge also stated that the full value of work performed was $19,197,790.91. *Id.* at 10.

ORIGINAL

GTA now moves to dismiss Smithbridge's Counterclaims because GTA and Smithbridge lack privity, and to dismiss Smithbridge's foreclosure claim because the lien was allegedly defective as a matter of law. Mot. Dismiss or Alt. J. Pldgs. (Mar. 23, 2025). Smithbridge opposes, arguing third-party beneficiary status, estoppel, and substantial compliance. Opp'n Pl.'s Mot. Dismiss or Alt. J. Pldgs. (Apr. 24, 2026).

## II.    LEGAL STANDARDS

A motion to dismiss under Guam Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the challenged claim. Dismissal is proper only where it appears beyond doubt that the nonmoving party can prove no set of facts in support of the claim that would entitle that party to relief. *Port Auth. of Guam v. Guam Indus. Servs., Inc.*, 2026 Guam 2 ¶ 27; *Cruz v. Cruz*, 2023 Guam 20 ¶ 10.

In deciding a Rule 12(b)(6) motion, the court considers the complaint, its exhibits, documents incorporated by reference, and materials on which the pleading relies. *Newby v. Gov't of Guam*, 2010 Guam 4 ¶ 14; *Core Tech Int'l Corp. v. Hanil Eng'g Constr. Co.*, 2010 Guam 13 ¶ 29. The court accepts well-pleaded factual allegations as true, construes the pleading in the light most favorable to the nonmoving party, and resolves doubts in that party's favor. *Cruz*, 2023 Guam 20 ¶ 10; *Guam Police Dep't v. Guam Civ. Serv. Comm'n (Charfauros)*, 2020 Guam 12 ¶ 8. This includes "[taking] as true the material facts alleged in the counterclaim." *First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9. The court does not, however, accept legal conclusions merely because they are framed as factual allegations. *Id.*

The same substantive standard applies to a motion for judgment on the pleadings under Rule 12(c). GRCP 12(c); *Yokeno v. Lai*, 2014 Guam 18 ¶ 14 n.2. Once the pleadings are closed, judgment on the pleadings is appropriate only when it is clear beyond doubt that the nonmoving

party can prove no set of facts entitling that party to relief. *Yokeno*, 2014 Guam 18 ¶ 14 n.2; *Port Auth. of Guam*, 2026 Guam 2 ¶ 27. As with Rule 12(b)(6), the court accepts well-pleaded factual allegations as true but does not credit unsupported legal conclusions. *Yokeno*, 2014 Guam 18 ¶ 14 n.2; *First Hawaiian Bank*, 2007 Guam 2 ¶ 9.

Where dismissal is sought for failure to join a required party, the court applies Rule 19. GRCP 12(b)(7), 19; *Benavente v. Taitano*, 2006 Guam 15 ¶ 76. The court first determines whether the absent person should be joined if feasible under Rule 19(a). GRCP 19(a); *Benavente*, 2006 Guam 15 ¶ 76. If joinder is feasible, the rule directs that the absent person be made a party. GRCP 19(a). If joinder is not feasible, the court then considers under Rule 19(b) whether, in equity and good conscience, the action should proceed or be dismissed. GRCP 19(b); *see also Benavente*, 2006 Guam 15 ¶ 84.

Finally, alleged defects in a mechanic's lien do not automatically deprive the court of subject-matter jurisdiction. *Core Tech*, 2010 Guam 13 ¶¶ 35–36; *Castino v. G.C. Corp.*, 2010 Guam 3 ¶ 19. The Guam Supreme Court has explained that the mechanics-lien statutes do not clearly identify lien elements as jurisdictional requirements. *Id.* Accordingly, challenges to the validity or enforceability of the lien as pleaded are more appropriately analyzed under Rule 12(b)(6) or Rule 12(c) rather than as jurisdictional. *Core Tech*, 2010 Guam 13 ¶¶ 35–36; GRCP 12(b)(6), 12(c).

## III.    DISCUSSION

### A.    Breach-of-Contract Counterclaims

#### 1.    Privity / third-party beneficiary.

GTA first argues Smithbridge cannot pursue its breach-of-contract counterclaims because Smithbridge lacks privity with GTA. That argument is too narrow at the pleading stage. Guam



law provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." 18 GCA § 85204. Because section 85204 tracks California Civil Code section 1559, California authority is persuasive in interpreting the statute. *See, e.g., O'Mara v. Hechanova*, 2001 Guam 13 ¶ 8 n.1. Under the cases the parties cite, third-party beneficiary status turns on contract interpretation and on whether the pleading plausibly alleges that the contract was made expressly for the benefit of the third party or a defined class including that party. *See Levy v. Only Cremations for Pets, Inc.*, 271 Cal. Rptr. 3d 250, 257–59 (Ct. App. 2020); *Goonewardene v. ADP, LLC*, 434 P.3d 124, 132–136 (Cal. 2019).

Smithbridge has adequately pleaded such a theory here. Its Counterclaim alleges that the prime contract and incorporated documents expressly contemplate subcontractor payment, permit direct payment by GTA to a subcontractor, and place project bonding and insurance obligations within the contractual structure governing the project. V. Answer Countercl. ¶¶ 39–50, 63–74. Smithbridge further alleges that GTA paid Smithbridge directly for at least twenty months, that Novamar paid Smithbridge nothing, and that GTA required partial waivers and releases before issuing those payments. V. Answer Countercl. ¶¶ 13–21, 46; V. Answer at 7–8. It also alleges that the subcontract incorporated the prime contract and that Smithbridge's proposal required GTA to provide a payment bond covering subcontractor work. V. Answer Countercl. ¶¶ 7–10, 26–27, 66–73. Taken as true, those allegations are sufficient to plead more than a merely incidental downstream benefit.

On the other hand, GTA emphasizes that the prime contract states the contract documents "shall not be construed to create a [contractual] relationship between or amongst any parties except the Owner and Contractor," and that the owner assumes subcontract obligations only


ORIGINAL

upon acceptance of an assignment after termination. Pl.'s Reply at 5 (May 11, 2026); V. Answer Countercl., Ex. A. at AIA Doc. A201–2017 §§ 1.1.2, 5.4. Those provisions may ultimately carry the day. But at this stage, the Court does not weigh competing contract inferences against the nonmovant. *See Cruz*, 2023 Guam 20 ¶ 10; *First Hawaiian Bank*, 2007 Guam 2 ¶ 9. Smithbridge has identified specific provisions and a course of performance that, if proven, could support a finding that at least some payment and security-related provisions were intended to benefit subcontractors as a defined class, including Smithbridge. V. Answer Countercl. ¶¶ 39–50, 63–74.

The Court therefore need not decide now whether Smithbridge will ultimately establish intended-beneficiary status. The present issue is only whether Smithbridge has pleaded a legally cognizable theory under 18 GCA § 85204. It has. Accordingly, GTA's motion to dismiss Smithbridge's first, second, and third breach-of-contract counterclaims for lack of privity is DENIED.

The fourth breach-of-contract theory is different from the first three. It relies on the Subcontract's Exhibit C, which states that Smithbridge is to be maintained in a cash-positive position for the project. V. Answer Countercl. ¶¶ 81–93; V. Answer, Ex. B: AIA Doc. A401-2017 Ex. C. Because that provision appears in the subcontract rather than the prime contract, GTA's liability on this claim is less straightforward and depends on whether Smithbridge can plausibly tie the provision to an obligation owed by GTA. But at this stage, the Court cannot say Smithbridge can prove no set of facts under its pleaded project-payment theory, thus, GTA's motion to dismiss the fourth breach-of-contract counterclaim is DENIED.

### 2.    Failure to join Novamar.

GTA next argues the contract counterclaims must be dismissed because Smithbridge failed to join Novamar. The court declines to do so. Rule 19 directs joinder, not dismissal, if a required party can feasibly be added. GRCP 19(a); *Benavente v. Taitano*, 2006 Guam 15 ¶¶ 76, 84. GTA has not shown that joinder of Novamar is infeasible. Accordingly, the proper remedy, if Novamar is required, is to order Novamar joined as a party. Only if joinder later proves infeasible would dismissal under Rule 19(b) become appropriate. GTA's Rule 12(b)(7) request is therefore DENIED without prejudice.

## B.  Foreclosure of Mechanic's Lien

GTA argues that the foreclosure counterclaim fails because Smithbridge did not timely serve the preliminary notice required by 7 G.C.A. § 33106 and did not timely record its lien under 7 G.C.A. § 33104. On the pleadings, that argument is well taken.

Section 33106 requires a written preliminary notice and provides that if notice is not timely served, a claimant may record a lien only for labor, services, equipment, or materials furnished within twenty days before service of the notice and thereafter. Smithbridge alleges no preliminary notice before January 5, 2026; instead, it points to its January 5, 2026 "Intent to Lien" as the operative notice. But an intent-to-lien letter is not the same as the statutory preliminary notice required by section 33106.

Smithbridge argues that it falls within the "direct contract with the owner" exception because GTA allegedly knew of the work and paid Smithbridge directly. It also invokes estoppel and substantial compliance. Those allegations do not, at the pleading stage, establish that Smithbridge had a direct contract with GTA within the meaning of the statute. Smithbridge's own counterclaim alleges that its subcontract was with Novamar, not GTA. And while the

ORIGINAL

authorities Smithbridge cites may support equitable relief in some cases, they do not override the statutory notice requirement where the pleadings do not allege a direct contract between Smithbridge and GTA.

The lien is also untimely on the face of the pleadings. GTA alleges that Smithbridge last furnished labor and materials by May 18, 2025, and Smithbridge's recorded lien states that all work was completed on June 7, 2025. V. Compl. at 4; V. Answer Countercl. ¶ 11. Yet Smithbridge did not record its lien until January 6, 2026. V. Compl. at 4. On either pleaded completion date, the lien was recorded outside the ninety-day period in 7 G.C.A. § 33104(a).

Smithbridge's estoppel arguments do not save the claim. Even assuming estoppel can apply in a mechanic's-lien case, Smithbridge's own pleadings show that the January 6, 2026 lien sought to secure payment for work completed months earlier. The pleadings do not allege labor, services, equipment, or materials furnished within the statutory time periods that would make the recorded lien enforceable under the lien statutes Smithbridge invokes.

Accordingly, Smithbridge has failed to state a claim for foreclosure of a valid mechanic's lien. GTA is entitled to dismissal of that counterclaim under Rule 12(b)(6), and the same reasoning supports judgment on the pleadings under Rule 12(c) as to the lien claim.

### C. GTA's Claims for Declaratory Relief and Cancellation

GTA alternatively seeks judgment on the pleadings on its claims for declaratory relief and cancellation of lien. On the present pleadings, Smithbridge's January 6, 2026 lien does not satisfy the statutory prerequisites discussed above. Smithbridge's arguments based on actual knowledge, estoppel, and substantial compliance do not change that result.

Accordingly, GTA is entitled to judgment on the pleadings declaring the January 6, 2026 mechanic's lien invalid and unenforceable, and to cancellation of that lien. The Court does not at


ORIGINAL

this stage make any finding that Smithbridge acted willfully or with an intent to defraud, because the present pleadings do not conclusively establish those facts. GTA's Motion is denied to the extent it seeks those additional findings or any other additional relief.

### D. Leave to Amend

Smithbridge requests leave to amend if the court finds any challenged counterclaim insufficiently pleaded. Leave to amend should be freely given when justice so requires. GRCP 15(a); *see M Elec. Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2016 Guam 35 ¶¶ 40–42. Because an amendment may clarify Smithbridge's contract theories, dismissal of the foreclosure counterclaim is without prejudice.

As to foreclosure based on the January 6, 2026 recorded lien, the dates currently alleged appear fatal. Still, the court cannot say, on this record, that no amendment could possibly state a narrower claim tied to a different factual or equitable theory. Leave to amend is therefore granted within the time set below.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby ORDERS:

1. GTA's motion to dismiss Smithbridge's breach-of-contract counterclaims under Rule 12(b)(6) is DENIED.

2. GTA's motion to dismiss Smithbridge's breach-of-contract counterclaims under Rule 12(b)(7) for failure to join Novamar is DENIED WITHOUT PREJUDICE.

3. GTA's motion to dismiss Smithbridge's counterclaim for foreclosure of mechanic's lien is GRANTED.

4. GTA's motion for judgment on the pleadings on GTA's claims for declaratory relief and cancellation of the January 6, 2026 mechanic's lien is GRANTED; the Court declares

ORIGINAL

that lien invalid and unenforceable and orders its cancellation.

5. GTA's request for judgment on the pleadings as to willfulness, intent to defraud, and any related enhanced statutory consequences is DENIED WITHOUT PREJUDICE.

6. Smithbridge may file an amended counterclaim within 14 days of this Order to be considered timely.

**SO ORDERED** this 2 July 2026.

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorneys:
William B. Brennan, Esq., Arriola Law Firm, LLC for Plaintiff
Joseph C. Razzano, Esq., & Joshua D. Walsh, Esq., Razzano Walsh & Torres, P.C., for Defendant

ORIGINAL